(C. D. 648)

A. W. FABER, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 12, 1942)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph B. Brady*, special attorney), for the defendant.

Before OLIVER and WALKER, Judges

WALKER, Judge: In this suit plaintiff seeks to recover money claimed to have been collected as excess duties on importations of merchandise described on the invoices as drawing chalks. Duty was assessed thereon by the collector at the rate of 50 cents per gross

and 30 per centum ad valorem under the provision in paragraph 1549 of the Tariff Act of 1930 for—

crayons (including chalk crayons and charcoal crayons or fusains), not specially provided for * * *.

and the protest claim is that the merchandise is properly dutiable at only 25 per centum ad valorem under the provision in paragraph 20 of the same act for—

Chalk * * * put up in the form of cubes, blocks, sticks, or disks, or otherwise, including tailors', billiard, red, and manufactures of chalk not specially provided for * * *.

At the opening of the trial plaintiff moved in evidence the appraiser's report in answer to the protest in the initial case, protest 948410–G, which reads as follows:

The merchandise in question consists of drawing chalks and was returned for duty as crayons (including chalk crayons and charcoal crayons or fusains) under Par. 1549 (a) Tariff Act of 1930 at 50¢ per gross and 30% ad valorem.

Above return conforms to the practice of the N. Y. Appraiser who further states that the case in question (T. D. 43074) is inapplicable to current shipments in view of the changed provisions in the 1930 Act.

Counsel for the plaintiff moved the incorporation of the record in *A. W. Faber (Inc.)* v. *United States*, T. D. 43074, referred to in the appraiser's report, and upon objection thereto being taken by defendant's counsel the court properly denied the motion, pointing out that the *Faber* case cited had been decided under the provisions of the Tariff Act of 1922, which provided for "crayons, including charcoal crayons or fusains" while in the 1930 act, under which the present case is brought, the provision has been enlarged to include chalk crayons, thus posing a different issue.

The general manager of the plaintiff company testified in its behalf. He was shown to have had long experience in the purchase and sale of merchandise such as that at bar, and had observed its manufacture abroad, and to have been likewise qualified by experience and observation with regard to crayons.

A sample of the merchandise involved was offered and received as exhibit 1. It consists of square sticks of material, about $\frac{5}{16}''$ x $\frac{5}{16}''$ x 3″, composed, according to the witness, of an average of 80 per centum chalk and 20 per centum dry coloring matter. It does not contain, the witness said, fats or gluey substances of any kind, clay, or binder. Crayons, he said, are composed of a composition of clay and coloring matter with a wax or gluey substance as a binding agent, and besides the difference in composition the witness stated that chalk erases or washes off easily, while crayon does not.

A very revealing passage occurred when the witness was interrogated by the court as follows:

Judge OLIVER. Do you make a distinction between a chalk and a crayon?

The WITNESS. Yes, sir.

Judge OLIVER. Is the crayon you are referring to a wax crayon?

The WITNESS. Yes, sir.

Judge OLIVER. What is a chalk crayon?

The WITNESS. There is really no such thing.

Judge OLIVER. So, when the tariff speaks of chalk crayon you don't know what it means?

The WITNESS. Naturally, if a man wants a crayon in stick form he will ask for a chalk crayon (R. p. 10).

The merchandise in issue, the witness said, is sold by him as chalk and he never referred to it or sold it as chalk crayon.

On behalf of the defendant the general manager of the crayon department of a domestic manufacturer testified that chalk crayons are made up and sold in various forms such as carpenter's chalk, school chalk, and for textile use. His firm, he said, made and sold colored drawing crayons of similar consistency to exhibit 1 although they were not known under the terminology of "drawing chalks" but of "drawing crayons." Such crayons, he said, contained no wax.

Government's other witness, a chemist in the employ of a domestic crayon manufacturer, testified that an article containing 80 per centum chalk and 20 per centum coloring matter would be called by him a crayon, or, specifically, a pastel crayon.

That the term "crayon" has a broad significance, covering articles made of chalk as well as of waxey material, is clear from the definition of the term in Webster's New International Dictionary:

*crayon.* n. 1. An implement for drawing, made of clay, plumbago, some preparation of chalk, or other material, usually sold in small prisms or cylinders.

and this is made more apparent by the definition in the same work of the word "chalk":

*chalk.* n. 1. A soft limestone of earthy texture, white, gray, or buff in color, chiefly composed of the minute shells of Foraminifera. * * *

2. Chalklike material, esp. that used in the form of crayons for drawing; also, a piece of such material.

Nowhere in the more widely referred to lexicographic works do we find a definition of the combined term "chalk crayons" as used in the act, but we are nevertheless of the opinion, from a consideration of the foregoing definitions and the record as made, that among the articles Congress had in mind when it included in the Tariff Act of 1930 a provision for "chalk crayons," were drawing chalks or drawing crayons such as are here involved. In our view the articles at bar fall within the common understanding of the term, and are more specifically provided for thereunder than under the provision in paragraph 20 for "chalk * * * put up in the form of * * * sticks."

Judgment will therefore issue overruling the protests in all respects.